IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville April 27, 2021

**MICHAEL BAILEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
Nos. 09-02887, 09-02888, 09-02889, 09-02890, 09-02891, 09-02892, 09-02893
Lee V. Coffee, Judge**

————————————————————

**No. W2019-02152-CCA-R3-PC**

————————————————————


The pro se Petitioner, Michael Bailey, appeals the denial of his petition for post-conviction relief in seven cases that resulted in his convictions for eight counts of aggravated robbery and one count of aggravated assault and an effective sentence of two consecutive life terms without the possibility of parole. Based on our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Michael Bailey, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**
**I. FACTUAL BACKGROUND**

In April 2009, the Shelby County Grand Jury indicted the Petitioner in seven cases with one count of aggravated assault and eight counts of aggravated robbery based on offenses committed in October and November 2008 against different victims. The Petitioner initially pled guilty to the offenses in exchange for an effective sentence of thirty years at sixty percent as a career offender. The Petitioner later filed a petition for writ of habeas corpus, alleging that the sentences were illegal because he should have been

sentenced at one hundred percent. The writ of habeas corpus was granted and the convictions vacated.

The Petitioner was subsequently convicted by a jury of aggravated robbery in case number 09-02888 and sentenced by the trial court as a career, repeat violent offender to life without the possibility of parole. The Petitioner pled guilty in the six other cases, 09-2887, 09-2889, 09-2890, 09-2891, 09-2892, and 09-2893, to seven counts of aggravated robbery and one count of aggravated assault, and was sentenced by the trial court for each aggravated robbery conviction to life without the possibility of parole. The trial court ordered the life sentence in case number 09-02888 served consecutively to one of the other life sentences, for an effective sentence of two consecutive life terms without the possibility of parole. On direct appeal of case number 09-02888, the Petitioner challenged the sufficiency of the evidence and the imposition of consecutive sentencing. This court affirmed the judgment of the trial court, and our supreme court denied the Petitioner's application for permission to appeal. State v. Michael Bailey, No. W2014-02517-CCA-R3-CD, 2016 WL 269851, at *1 (Tenn. Crim. App. Jan. 11, 2016), *perm app. denied* (Tenn. May 9, 2016).

On October 2, 2015, the Petitioner filed a pro se petition for post-conviction relief, followed by an amended petition after the appointment of counsel, and, still later, a pro se "Supplemental Amended Petition for Post-Conviction Relief." In the amended petition filed by appointed counsel, the Petitioner alleged that his trial counsel was ineffective for failing to adequately investigate the case or meet with and communicate with the Petitioner. He further alleged that his guilty pleas were unknowing and involuntary because they were coerced by trial counsel, were entered at a time when the Petitioner had not taken his necessary psychiatric medication, and resulted in sentences that were no better than the sentences the Petitioner would have received had he been convicted at trial. In the original and supplemental pro se petitions, the Petitioner alleged that trial counsel coerced him into pleading guilty by telling him she could not win at trial and leading him to believe that his guilty pleas would result in a repeat of his original thirty-year sentence rather than the consecutive life without parole sentences he received.

Prior to the July 1, 2019 evidentiary hearing, the Petitioner waived his right to counsel. Consequently, he represented himself at the evidentiary hearing, with his post-conviction counsel appointed as elbow counsel. The Petitioner began his examination of trial counsel by asking if she was familiar with presentence reports and complaining about her failure to contest the presentence report's allegedly false information that he had given a statement to police. After seeking clarification about what the Petitioner was asking, trial counsel testified that she did not have a presentence report to review with the Petitioner before the Petitioner's trial or guilty pleas because a presentence report is not ordered by the trial court until after conviction. She reminded the Petitioner that she had reviewed

with him his extensive criminal history, which was part of the information contained in the presentence report.

After arguing with the post-conviction court and trial counsel about the statutory language and when the report should have been prepared, the Petitioner began complaining that the trial court sentenced him on the day he was convicted and later resentenced him in the same case. The Petitioner asserted that his second sentencing for the same case violated double jeopardy. Because the Petitioner was so unclear, the prosecutor attempted to clarify the Petitioner's argument, explaining to the post-conviction court that she believed the Petitioner was referring to the fact that a sentencing hearing to determine whether the life sentences required by law would be served consecutively or concurrently was held after the Petitioner's entry of his guilty pleas.

When asked by the post-conviction court whether he understood, the Petitioner responded that he did not, expressed his belief that someone had altered the judgment forms, and continued to make confusing arguments about issues with his presentence report. In another attempt to clarify the Petitioner's argument, the prosecutor recited the procedural history of the case, including that the State had offered a plea-bargained sentence of thirty years at one hundred percent in exchange for the Petitioner's guilty pleas to all the offenses after the Petitioner's original convictions were vacated, but the Petitioner rejected the offer. The prosecutor said the presentence report prepared after the Petitioner was convicted erroneously reflected the Petitioner's original thirty-year sentence for the offenses.

After further argument with the post-conviction court about whether the trial court and trial counsel were responsible for errors in the presentence report, the Petitioner continued with his direct examination of trial counsel. Trial counsel testified she was appointed to represent the Petitioner after he filed his pro se petition for writ of habeas corpus. She stated that she tried unsuccessfully to explain to the Petitioner what was obvious to all the attorneys, which was that the technically illegal thirty-year sentence at sixty percent was to his benefit. She informed the Petitioner that because the law provided for one hundred percent service, the Petitioner's thirty-year sentence at only sixty percent for all eight aggravated robberies was "a good deal," especially given the fact that he was a repeat violent offender, which would require that he serve a life sentence without parole if he were found guilty on any one of the eight matters that were then set for trial.

Trial counsel identified a letter she had sent to the Petitioner in which she recorded her explanation of the situation, as well as the Petitioner's demand for a twenty-year sentence. Trial counsel could not recall having told the Petitioner that she was angry at him for insisting on a trial. She said, however, that it sounded reasonable to her that she

might have asked the Petitioner why he was insisting on a trial when the discovery in the case, combined with her experience, indicated that the outcome would not be good.

Trial counsel testified that she was aware that the Petitioner had been prescribed psychiatric medication. Her understanding was that the medication was necessary, as it helped the Petitioner make decisions and enabled him to participate in his defense. Trial counsel disputed the Petitioner's claim that he had been sentenced twice for the same offense, testifying that all the parties were aware at the time the Petitioner entered his pleas that the sentence would be life without parole and that the only real issue, reserved for the sentencing hearing, was whether the sentences would be ordered to run concurrently or consecutively. She took exception to the Petitioner's repeated assertions that she wanted him to plead guilty, stating that she did not have "a dog in the hunt."

On cross-examination, trial counsel testified that she had been in private practice for approximately seven years, focused exclusively on criminal law, at the time she represented the Petitioner. At the time of her appointment, the case had been transferred to the trial court in Shelby County for further proceedings following the habeas court's ruling that the sentence was illegal. Trial counsel explained that the Petitioner had filed his habeas corpus petition in another jurisdiction, which was where he was incarcerated, and that court could not resentence him. She said she first talked with the Petitioner about not following through with the habeas petition and instead attempting to persuade the trial court to leave the sentence as it was originally imposed. When the Petitioner declined that route, the prosecutor made an offer of thirty years at one hundred percent. Trial counsel agreed the prosecutor had made it clear that the State would be filing notice that the Petitioner was subject to a life sentence without parole and that the prosecutor did indeed file that notice when plea negotiations broke down.

Trial counsel recalled that the Petitioner had undergone a mental evaluation and was found competent to stand trial. She said that she was not surprised at the Petitioner's pro se appearance at the evidentiary hearing, as the Petitioner was always very interested in the disposition of his case and confident in his abilities to represent himself. She was aware that the Petitioner's medical records reflected that he had refused his medication at different points during his incarceration. She was also aware that the Petitioner had been found to be malingering at times.

Trial counsel acknowledged that the State's proof in the case that went to trial included the victim's identification of the Petitioner as the perpetrator and the Petitioner's confession. Additionally, the Petitioner was found in possession of a weapon that matched the victim's description of the gun used in the robbery. She said she had hired an investigator, reviewed discovery, and was prepared for trial; however, the State's case was very strong and the defense case very weak. She testified that the State's proof in the cases

that resulted in guilty plea convictions was similarly strong, with victim identifications of the Petitioner as the perpetrator.

Trial counsel testified that she did not advise the Petitioner to plead guilty, as she would never be part of such a serious decision. Instead, she presented the options to the Petitioner and allowed him to make his own decision. She recalled that the trial court informed the Petitioner that he would be sentenced to life in prison without the possibility of parole and that it would be served at one hundred percent. She also recalled that the Petitioner responded that he understood and that he was satisfied with her representation.

The Petitioner refused the opportunity for redirect examination of trial counsel, informing the post-conviction court that he had no further questions because the post-conviction court would just interrupt him. When asked if he had any further proof to present, the Petitioner stated that he wanted the prosecutor who had handled the guilty plea hearing as a witness because she continually referred to him as a "three strikes offender" rather than as a "repeat violent offender." The Petitioner asserted that he could not legally be sentenced as a repeat violent offender without the prosecutor's having used those specific words.

The post-conviction court denied the Petitioner's request. The Petitioner then announced that he wanted to leave and that the post-conviction court should just deny the petition. The following exchange occurred:

> THE COURT: Judge - - she put you on notice, the Court put you on notice. It's all contained in your guilty plea colloquy.
> THE PETITIONER: Okay. I'm ready to go.
> THE COURT: You don't have any other proof you want to present?
> THE PETITIONER: No. No. I'm straight.
> THE COURT: You're ready to go?
> THE PETITIONER: Yeah. Just gone [sic] and deny it and let me go.
> THE COURT: Thank you, sir. You can step out, Mr. Bailey.

In a lengthy oral ruling issued after the Petitioner's premature departure from the courtroom, the post-conviction court found, among other things, that the Petitioner had abandoned his petition for post-conviction relief by walking out in the middle of the hearing, that the Petitioner had failed to present any proof to show that he received ineffective assistance of counsel but instead kept raising complaints that were irrelevant to the claims in his petition, and that the Petitioner deliberately tried to mislead the court and was not truthful in the details he presented about the case. The court further found that the Petitioner failed to show that his guilty pleas were unknowing and involuntary.

- 5 -

On November 4, 2019, the post-conviction court entered a lengthy and detailed written order denying the petition. The court found that the denial of the petition was justified not only by the Petitioner's abuse of the judicial process by walking out of the hearing without presenting his own sworn testimony but also by the Petitioner's failure to prove his allegations of ineffective assistance of counsel and involuntary and unknowing guilty pleas by clear and convincing evidence. With respect to the latter, the court accredited trial counsel's testimony that the Petitioner was able to participate in his defense and that it was the Petitioner's decision to plead guilty after being fully informed of the guilty plea agreement and the consequences of the pleas. The court observed that the Petitioner answered appropriately in the guilty plea colloquy with the trial court, indicating, among other things, that his trial counsel had fully informed him of the plea agreement and that he understood he would be sentenced to life without the possibility of parole.

The Petitioner was appointed counsel to represent him in this appeal but filed a motion with this court requesting that he be allowed to proceed pro se. Post-conviction counsel also filed a motion requesting that he be allowed to withdraw from representation. Post-conviction counsel asserted in his motion that he had received a letter from the Petitioner with "hateful language" and coated in a brown substance that counsel believed to be human feces.

On July 15, 2020, this court entered an order remanding the case to the post-conviction court for an evidentiary hearing "to determine whether the [Petitioner] wishes to make a knowing and intelligent waiver of the right to counsel on appeal or whether his misconduct justifies a forfeiture of the right to counsel on appeal." Following an evidentiary hearing, the post-conviction court entered an order finding that the Petitioner voluntarily, knowingly, and intelligently waived his right to counsel on appeal. The court further found that the Petitioner had abused the judicial process and engaged in a pattern of despicable behavior with his series of appointed post-conviction counsel. The court noted that the Petitioner did not deny that he had coated the letter to his latest counsel in fecal matter, and found that, by not denying the allegation, the Petitioner tacitly admitted the misconduct. The court, therefore, found that the Petitioner not only knowingly and intelligently waived his right to counsel, but also forfeited his right to counsel by his outrageous and unconscionable behavior.

## II. ANALYSIS

The Petitioner contends on appeal that trial counsel was ineffective for, among other things, failing to properly investigate the case, including the Petitioner's mental health issues, and failing to adequately communicate with the Petitioner. The State argues that the post-conviction court properly denied the petition for post-conviction relief because the

Petitioner has not shown that he was denied the effective assistance of counsel or that his guilty pleas were unknowing and involuntary. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's

errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App.1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn.1993).

We conclude that the post-conviction court properly denied the petition. First, we agree with the post-conviction court that the pro se Petitioner abandoned his petition by walking out in the middle of the evidentiary hearing without providing any sworn testimony to support his factual allegations. See Tenn. Code. Ann. §40-30-110 (a)("The petitioner shall appear and give testimony at the evidentiary hearing if the petition raises substantial questions of fact as to events in which the petitioner participated, unless the petitioner is incarcered out of state[.]") Second, we agree that the evidence the Petitioner presented, which was essentially only the testimony of trial counsel, failed to show that the trial counsel was deficient in her performance, that the Petitioner was prejudiced as a result of any alleged deficiency, or that the Petitioner's guilty pleas were not knowingly, voluntarily and intelligently entered. Trial counsel's testimony, which was accredited by the post-conviction court, was that the Petitioner took medication that enabled him to participate in his own defense, that he was engaged and interested, and that he made the decision to plead guilty after she fully informed him of the plea agreement and the sentences he would be required to serve due to his lengthy criminal background and

previous convictions for aggravated robbery.  We, therefore, affirm the judgment of the post-conviction court.

## III.  CONCLUSION

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE